# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re NEW CANYONLANDS BY NIGHT, LLC, and CANYONLANDS RIVER TOURS, LLC, for and on behalf of the vessel number UT0757GR for exoneration from or limitation of liability, | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SANCTIONS**<br><br>Case No. 2:17-cv-01293-DN<br><br>District Judge David Nuffer |

      This is an action under admiralty and maritime law for exoneration or limitation of liability arising from a September 8, 2017 boat accident on the Colorado River near Moab, Utah.[1] Claimants[2] were passengers on the vessel at the time of the accident.

      Claimants now seek entry of sanctions against the vessel's owners—New Canyonlands by Night, LLC and Canyonlands River Tours, LLC's (collectively, "Canyonlands")—for spoliation of evidence.[3] After the accident, Canyonlands had the vessel repaired and discarded the damaged parts of its failed steering system without providing Claimants notice or the opportunity to inspect the vessel.[4] Claimants argue that this spoliation of evidence (1) prejudiced their ability to determine the cause of the vessel's steering failure and to challenge the reports and opinions of Canyonlands' expert, William W. Dials, who inspected the vessel prior to its

---

[1] Complaint for Exoneration from or Limitation of Liability, docket no. 2, filed Dec. 19, 2017.

[2] Claimants include Stanley J. Kahn, Marlena Kahn, Ryan Ford, Karen Konen, Alen Konen, Terri McCammond, Cecil McCammond, Veronica McCormick, Raymond McCormick, Barbara Morris, Brian Morris, Alan Ford, Marilyn Ford, and Margret Zimmer.

[3] Claimants' Motion for Sanctions, docket no. 88, filed Aug. 13, 2019.

[4] *Id*. ¶¶ 11-30 at 4-7.

repair, and (2) "increased the cost of litigation . . . and has unduly delayed its disposition, adding significant investigatory and legal costs."[5]

Because Canyonlands' intentionally made unavailable evidence that was relevant and central to the litigation—with knowledge that the litigation was imminent—to Claimants' prejudice, Claimants Motion for Sanctions[6] is GRANTED. To cure the prejudice to Claimants caused by Canyonlands' spoliation of evidence, the opinions and reports of Canyonlands' expert, William W. Dials, regarding the cause of the vessel's steering failure are excluded from admission in evidence.

## BACKGROUND

On January 6, 2017, Canyonlands purchased an aluminum Waterman Welding Jetboat built in 1992.[7] On August 11, 2017, Canyonlands' part-owner and general manager, Rory Paxman, installed a new SeaStar steering helm and ram on the vessel.[8] Approximately one month later, on September 8, 2017, the vessel suffered a steering loss while transporting 28 passengers (including Claimants) on the Colorado River near Moab, Utah.[9] The steering failure caused the vessel to crash into the shoreline.[10]

At the scene of the accident, it was observed that the tie rod in the vessel's steering system was separated from the port tiller arm.[11] Several governmental agencies conducted

---

[5] *Id*. at 9-12.

[6] Docket no. 88, filed Aug. 13, 2019.

[7] Motion for Sanctions ¶¶ 1, 3 at 2; Plaintiffs In Limitation New Canyonlands By Night, LLC's and Canyonlands River Tours, LLC's Opposition to Claimants' Motion for Sanctions ("Response") § II.B. at 3, docket no. 93, filed Sept. 10, 2019.

[8] Motion for Sanctions ¶ 2 at 7, ¶ 5 at 3; Response § II.B. at 3.

[9] Motion for Sanctions ¶ 6 at 3; Response § II. at 1-2, § II.C. at 3.

[10] Motion for Sanctions ¶ 6 at 3; Response § II. at 1-2, § II.C. at 3.

[11] Motion for Sanctions ¶ 7 at 3.

independent investigations of the accident and took photographs of the damaged vessel and its steering system, so far as was readily visible.[12] At the request of Canyonlands' insurer, the damaged vessel was also inspected by marine surveyor William W. Dials eleven days later, on September 19, 2017.[13] The government investigators, as well as Mr. Dials and Mr. Paxman, agree that the tie rod connecting the steering to the port jet disconnected, causing the vessel's steering failure.[14]

During Mr. Dials's inspection, he and Mr. Paxman found a nut in the vessel's bilge.[15] Canyonlands preserved the nut as evidence.[16] Mr. Dials opines that the loss of steering resulted from the nut backing off the connecting rod (which also may not have been preserved) over time, which allowed the connecting arm to disconnect, and disabled the starboard jet nozzle.[17] Mr. Dials also observed during his inspection that the steering ram was bent.[18] He opines that the bend occurred during the accident when the operator forced the helm beyond hard-over in an effort to avoid the allision.[19]

Several passengers were injured in the accident, and at least seven received medical treatment.[20] Mr. Paxman testified that on the date of the accident, he understood that passengers were injured and that the incident might give rise to litigation.[21] Starting the day after Mr. Dials's

---

[12] *Id*. ¶ 10 at 3-4; Response § II.D. at 3-4.

[13] Response § II.D. at 4.

[14] *Id*.; Motion for Sanctions ¶ 10 at 3-4.

[15] Response § II.D. at 4.

[16] *Id*.

[17] *Id*.; Motion for Sanctions ¶ 22 at 6.

[18] Response § II.D. at 4.

[19] *Id*.

[20] *Id*. § II.C. at 3.

[21] Motion for Sanctions ¶ 9 at 3.

inspection on September 20, 2017, Canyonlands' insurer began sending formal communication to the passengers injured in the crash.[22] On September 26, 2017, Thaddeus Wendt—one of Claimants' lead counsel—sent Canyonlands a letter indicating that he represented passengers that were injured in the crash.[23] The letter instructed Canyonlands to preserve business records related to the accident and information relating to the vessel and its whereabouts.[24]

In December 2017, Canyonlands delivered the damaged vessel to Waterman Welding and Machining, LLC ("Waterman Welding") for repairs.[25] There is no evidence—or assertion by Canyonlands—that Canyonlands gave notice to known Claimants regarding Canyonland's plans to have the vessel repaired.[26] Waterman Welding repaired the vessel's hull, *replaced its steering system, and discarded its damaged parts*, including the SeaStar steering ram.[27] There is no evidence—or assertion by Canyonlands—that Canyonlands or their insurer requested that Waterman Welding preserve the vessel's damaged parts.[28]

On December 19, 2017, Canyonlands filed its Complaint for Exoneration From or Limitation of Liability.[29]

---

[22] *Id*. ¶ 12 at 4.

[23] *Id*. ¶¶ 13-14 at 4; Response § IV at 6.

[24] Motion for Sanctions ¶¶ 13-14 at 4; Response § IV at 6.

[25] Motion for Sanctions ¶ 16 at 4; Response § II.E at 4.

[26] Motion for Sanctions ¶ 17 at 5; Response.

[27] Motion for Sanctions ¶¶ 17-18 at 5; Response § II.E at 4.

[28] Motion for Sanctions ¶ 17 at 5; Response.

[29] Docket no. 2, filed Dec. 19, 2017.

## DISCUSSION

### Canyonlands' spoliation of evidence warrants sanctions

"Federal courts possess inherent powers necessary 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[30] "Among those inherent powers is 'the ability to fashion an appropriate sanction.'"[31] "A spoliation sanction is proper where (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."[32]

Both requisites for spoliation sanctions are present in this case. On the day of the incident, Canyonlands were aware the vessel's crash caused injuries to passengers, and that the accident might lead to litigation.[33] Eleven days after the crash, Canyonlands' insurer had an engaged expert (Mr. Dials) on site. Within two weeks of the crash, Canyonlands received notice that some of the injured passengers were represented by counsel.[34] The notice also instructed Canyonlands to preserve business records related to the incident and information relating to the vessel and its whereabouts.[35] And just over four months after the accident, as Canyonlands had the vessel delivered for repairs which included disposal of critical evidence, Canyonlands initiated this case.[36] These circumstances demonstrate that Canyonlands had a duty to preserve evidence because they knew litigation was imminent. Indeed, Canyonlands took efforts to

---

[30] *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, *3 (10th Cir. 1998) (unpublished) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

[31] *Id*. (quoting *Chambers*, 501 U.S. at 43).

[32] *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007) (citing *103 Inv'rs I, LP v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006)).

[33] Motion for Sanctions ¶ 9 at 3.

[34] *Id*. ¶¶ 13-14 at 4; Response § IV at 6.

[35] Motion for Sanctions ¶¶ 13-14 at 4; Response § IV at 6.

[36] Complaint for Exoneration From or Limitation of Liability.

preserve evidence favorable to their position without affording the known injured parties or their representative a similar opportunity.[37]

Despite knowing that litigation was imminent, and preserving evidence favorable to their position, Canyonlands made an affirmative decision to have the vessel repaired.[38] At that time, there was agreement among the government's investigators, Canyonlands (Rory Paxman), and Canyonlands' expert (Mr. Dials) that a steering failure caused the vessel to crash.[39] When making the decision to have the vessel repaired, Canyonlands knew that the vessel's damaged steering system was critical evidence to the imminent litigation. Nevertheless, Canyonlands did not provide notice to known Claimants of their plans to have the vessel repaired, nor did Canyonlands request that the vessel's damaged parts be preserved when the repairs were performed.[40]

Although Canyonlands asserts that it had the vessel repaired for business purposes,[41] "[b]ad faith, or culpability, 'may not mean evil intent, but may simply signify responsibility and control.'"[42] Canyonlands knew litigation was imminent and had a duty to preserve evidence. Canyonlands had the ability to preserve the evidence because Canyonlands had possession and control over the evidence. And Canyonlands was responsible for the spoliation of critical evidence through their affirmative decision to have the damaged vessel repaired without providing notice to known Claimants, and without requesting that the vessel's damaged parts be

---

[37] Response § II.D. at 4.

[38] *Id*. § II.E. at 4; Motion for Sanctions ¶ 16 at 4.

[39] Response § II.D. at 4; Motion for Sanctions ¶ 10 at 3-4.

[40] Motion for Sanctions ¶ 17 at 5.

[41] Response § II.E. at 4.

[42] *Philips Elecs. N.A. Corp. v. BC Tech.*, 773 F.Supp.2d 1149, 1203 (D. Utah 2011) (quoting *Phillip M Adams & Assocs.*, LLC v. Dell, Inc., 621 F.Supp.2d 1173, 1193 (D. Utah 2009)).

preserved. These circumstances demonstrate an intentional and bad faith spoliation of evidence,[43] not mere negligence on the part of Canyonlands.

Because of Canyonlands' spoliation of evidence, the damaged vessel and its steering system were unavailable for inspection by Claimants' expert, Bruce Belousofsky.[44] Rather, Mr. Belousofsky was left to rely on the photographs taken by government investigators and Canyonlands' expert.[45] This placed Claimants at a disadvantage to Canyonlands, because Canyonlands' expert (Mr. Dials) physically inspected the damaged vessel.[46] Specifically, Claimants were prevented from physically observing the damaged steering system and testing Mr. Dials' contentions regarding the bent steering ram and the cause of tie rod's disconnection.[47] Claimants were also prevented from physically examining and testing the vessel's underbody and steering system to determine alternate causes of the steering failure.[48] Mr. Belousofsky's review of the post-accident photographs allowed for limited observations and opinions,[49] but was not an adequate substitute for physically examining and testing the damaged vessel and its steering system.[50]

Therefore, Canyonlands' spoliation of evidence prejudiced Claimants ability to determine the cause of the vessel's steering failure and to challenge the reports and opinions of Canyonlands' expert (Mr. Dials) regarding the cause of the vessel's steering failure.

---

[43] *In the Matter of the Complaint of Boston Boat III, LLC*, 310 F.R.D. 510 (S.D. Fla. 2015).

[44] Motion for Sanctions ¶¶ 18, 20-21 at 5-6.

[45] *Id*. ¶ 21 at 5-6.

[46] Response § II.D. at 4.

[47] Motion for Sanctions ¶ 26 at 7.

[48] *Id*. ¶ 21 at 5-6, ¶¶ 27-28 at 7.

[49] *Id*. ¶ 21 at 5-6.

[50] *103 Inv'rs I, LP v. Square D Co.*, 470 F.3d at 989.

### Exclusion of the reports and opinions Canyonlands' expert, William W. Dials, regarding the cause of the vessel's steering failure is a sufficient sanction at this time to cure the prejudice to Claimants

"District courts have 'substantial weaponry' in their arsenal to shape the appropriate relief for a party's spoliation of evidence."[51] "Among the options, a court may strike witnesses; issue an adverse inference; exclude evidence; or, in extreme circumstances, dismiss a party's claims[.]"[52] When deciding the appropriate sanction for a party's spoliation of evidence, "courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party."[53] "[A] court should impose the least onerous sanction that will remedy the prejudice and, where applicable, punish the past wrongdoing and deter future wrongdoing."[54]

Canyonlands' culpability is high. They knew Claimants were represented by counsel and that litigation was imminent and Claim; they knew the damaged steering system was relevant and critical evidence to the litigation; and they knew Claimants desired that evidence be preserved.[55] Canyonlands preserved evidence favorable to their position, but allowed the vessel to be repaired and the damaged steering system to be discarded.[56] And Canyonlands did so

---

[51] *Helget v. City of Hays, Kan.*, 844 F.3d 1216 (10th Cir. 2017) (citing *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009); *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

[52] *Id*. (internal citations omitted).

[53] *Jordan F. Miller Corp.*, 139 F.3d 912, *4 (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994); *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 267-69 (8th Cir. 1993); *Vazquez-Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 13-14 (D.P.R. 1997)).

[54] *Id*. (citing *Schmid*, 13 F.3d 76, 78); *103 Inv'rs I, LP*, 470 F.3d at 989.

[55] *Supra* at 5-6.

[56] Response §§ II.D.-E. at 4; Motion for Sanctions ¶ 16 at 4.

without providing notice to known Claimants.[57] Canyonlands spoliation of evidence was intentional and in bad faith.[58]

The prejudice to Claimants is also high, though not irreparable. Canyonlands' spoliation of evidence prejudiced Claimants' ability to determine the cause of the vessel's steering failure and to challenge the reports and opinions of Canyonlands' expert (Mr. Dials) with inspection equivalent to his work.[59] But the spoliation does not prevent Claimants from mounting a defense against Canyonlands' Complaint for Exoneration From or Limitation of Liability. As argued in Claimants' Motion for Summary Judgment,[60] Claimants have potentially viable defenses and the ability to show Canyonlands' negligence despite their inability to access central evidence. Therefore, terminating sanctions are not appropriate at this time.[61]

Rather, the appropriate immediate sanction to cure the prejudice to Claimants is to place Canyonlands' expert reports and opinions on the same footing as Claimants' expert report and opinions. Because the damaged vessel and its steering system were unavailable, Claimants' expert had to rely on the photographs taken by government investigators and Canyonlands' expert (Mr. Dials).[62] Canyonlands' causation experts should be limited to the same evidence. Therefore, because Canyonlands' expert (Mr. Dials), had the opportunity to physically inspect the damaged vessel and its steering system,[63] it is appropriate to exclude Mr. Dials' expert reports and opinions regarding the cause of the vessel's steering failure.

---

[57] Motion for Sanctions ¶ 17 at 5.

[58] *Supra* at 5-7.

[59] *Id*. at 7.

[60] Docket no. 87, filed Aug. 13, 2019.

[61] *Jordan F. Miller Corp.*, 139 F.3d 912, *4 (citing *Schmid*, 13 F.3d 76, 78).

[62] Motion for Sanctions ¶¶ 18, 20-21 at 5-6.

[63] Response § II.D. at 4.

Additional sanctions against Canyonlands may also be appropriate if Claimants are shown to have suffered further prejudiced by Canyonlands' intentional spoliation of critical evidence and unilateral preservation of selected evidence. This may include the trier of fact evaluating any theory or argument of causation that is based on unilaterally preserved, selected and evaluated evidence used by Mr. Dials as having impaired credibility. This may also include terminating sanctions. Such determination will be made after the presentation of evidence at trial.

Claimants also request that Canyonlands be required to pay the increased costs caused by the spoliation of evidence.[64] However, Claimants have not presented sufficient evidence of their increased costs. Absent the spoliation, Claimants would still have had to expend costs for their expert to inspect the vessel to determine the cause of its steering failure. Therefore, Claimants' costs will not be imposed as an additional sanction against Canyonlands.

---

[64] Motion for Sanctions 9-12.

**ORDER**

IT IS HEREBY ORDERED that Claimants' Motion for Sanctions[65] is GRANTED.

IT IS FURTHER HEREBY ORDERED that the opinions and reports of Canyonlands' expert, William W. Dials, regarding the cause of the vessel's steering failure are excluded from admission in evidence.

FURTHER, Canyonlands is on notice that their prejudicial actions may be taken into account by the trier of fact in evaluating any theory or argument of causation of the accident. That is, any evidence or argument based on the unilaterally preserved, selected and evaluated evidence used by Mr. Dials may have impaired credibility. Additional sanctions may also be ordered. Determination of further spoliation sanctions being warranted will be made nearer to or at trial.

Signed November 1, 2019.

BY THE COURT

David Nuffer
United States District Judge

---

[65] Docket no. 88, filed Aug. 13, 2019